## Isador Judejko, Appellee, v. Chicago City Railway Company, Appellant.

## Gen. No. 15,976.

1. INSTRUCTIONS—*what not considered upon motion for peremptory.* In considering the question whether or not a peremptory instruction should be given, it is not within the province of the court to weigh the evidence.

2. EVIDENCE—*as to what expert testimony competent.* It is proper to permit a duly qualified expert to state his individual conclusions or ideas of what a sciagraph shows.

Action in case for personal injuries. Appeal from the Superior

Court of Cook county; the HON. GEORGE A. DUPUY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909. Affirmed. Opinion filed November 15, 1911. *Certiorari* denied by Supreme Court (making opinion final).

JAMES J. CONDON and WATSON J. FERRY, for appellant.

JOHNSON & BELASCO, for appellee; JOEL BAKER, of counsel.

MR. PRESIDING JUSTICE BAUME delivered the opinion of the court.

This appeal is prosecuted to reverse a judgment for $4,000 entered against appellant in the Superior Court upon the verdict of a jury, in an action in case to recover damages for personal injuries alleged to have been sustained by appellee through the negligence of appellant. The declaration contains two counts, the first of which charges that while appellee was a passenger on one of appellant's cars, said car stopped at the intersection of Archer avenue and Clark street, at a usual and customary place for passengers to alight; and that while appellee in the exercise of due care was attempting to alight from said car, appellant negligently started, moved and jerked said car suddenly, violently, and without any warning or notice, whereby appellee was thrown therefrom and injured. The second count is substantially like the first, save that it omits the allegation that the car had stopped before appellee attempted to alight therefrom.

The grounds urged for a reversal of the judgment are: That the verdict is not justified by the evidence; that the verdict is against the manifest weight of the evidence; that the trial court erred in admitting improper evidence; and the verdict is excessive.

Under the first assignment of error appellant insists that a peremptory instruction should have been given to the jury at the close of the evidence for appellee, and proceeds to support such insistence by an

argument which necessarily involves the weighing of such evidence and determining its probability or improbability. In considering the question whether or not the peremptory instruction tendered by appellant should have been given, it is not within the province of this court, as it was not within the province of the trial court, to weigh the evidence. The evidence offered by appellee discloses a state of facts, which required the submission of the case to the jury, and the giving of the peremptory instruction tendered by appellant would have been flagrant error.

Sometime between 9:30 and 11:30 o'clock, on the night of August 8, 1907, appellee and a number of his co-laborers left their boarding house on Illinois court, for the purpose of going to their working place in the Jackson tunnel, near State street, where they were supposed to commence work at midnight. They boarded one of appellant's cars at Thirty-second and Halsted streets, rode north in Halsted street to Archer avenue and thence in said avenue to a point near its intersection with Clark street, where they intended to change to another of appellant's cars for the purpose of being carried to State street. Appellee and his fellow laborers are Lithuanians, unable to speak the English language intelligibly, and all testified through an interpreter to the facts and circumstances relating to the accident, and the manner of its happening. There is no direct countervailing evidence in the record upon that subject. The testimony of these witnesses for appellee is not wholly consistent in some minor particulars, but in the main it is readily reconcilable, and bears the impress of genuineness, even upon the printed page.

Their testimony tends to show that upon the occasion in question the car, before it reached the switch on the west side of Clark street, stopped upon a slight incline, for the purpose of discharging and receiving passengers; that all of appellee's companions alighted

from the car in advance of him; that as appellee was in the act of alighting from the rear platform, his left hand grasping the rail, his right holding his lunch and his overalls, his left foot on the lower step, his right foot about to touch the ground, the car suddenly started forward with a jerk, and he fell to the ground, striking his left side. Some of the witnesses designate the incline, at the point where the car stopped, as a "hill," and it is insisted that it is impossible that the car could have been brought to a stop upon a hill. The word "hill" is the simplest form of expression in the language to designate an elevation, ascent, or incline, and its use by the witnesses for appellee is of no significance, in view of the fact that the evidence tends to show the cars of appellant customarily stopped at the place where the accident in question occurred, to enable passengers to transfer to other cars.

A careful consideration of the evidence impels us to the conclusion that the jury were not unwarranted in finding that appellant was guilty of the negligence alleged; that appellee was not guilty of negligence contributing to his injury; and that appellee sustained an injury as the proximate cause of appellant's negligence.

The evidence bearing upon the extent of appellee's injury is in hopeless conflict. It is claimed on behalf of appellee that his resultant injury consisted of an impacted fracture of the neck of his left femur, while appellant insists that the abnormal condition of appellee's left hip was induced by some undefined disease akin to tuberculosis, scrofula or syphilis, as evidenced by scars on appellee's legs and back.

It appears from the evidence that immediately after the accident appellee was conveyed to his boarding house in a police patrol wagon; that he was there treated by a physician three or four times, such treatment consisting merely of prescriptions for medicine, procured at a drug store; that during the five days

he remained in his boarding house he suffered severe pain in his left side, " couldn't stand, couldn't lay or couldn't sit;" that on August 13, 1907, he was taken to the County Hospital where he remained until October 15th following; that upon his arrival at the hospital he was put to bed, a board was placed at his side extending from his arm to his foot, his foot was bandaged and a board was placed across and under it, and two boards were placed beneath him; that he laid straight and still with the boards in the position indicated for six weeks; that the boards were then removed and he remained in bed altogether eight or ten weeks; that when he left the hospital he walked with crutches, and went to the house of a friend where he remained five months, during which time he was unable to work and suffered much pain; that thereafter he went to the County Institution at Dunning where he was an inmate at the time of the trial in February, 1909; that he then continued to suffer pain, could not walk without limping and was unable to perform any hard manual labor. The foregoing statement is taken largely from the testimony of appellee, which not only stands uncontradicted in the respects mentioned, but is corroborated by the testimony of other witnesses in some essential particulars.

It is manifest from the testimony of the physician and surgeon, who had general charge of appellee's case when the latter was taken to the Cook County Hospital, that he had no independent recollection of making a diagnosis of appellee's injury, or of the treatment prescribed, and that both diagnosis and treatment were entrusted to an interne in the hospital, whose whereabouts at the time of the trial was unknown. One physician and surgeon called as an expert on behalf of appellant testified that he examined appellee on January 3, 1908, and that in his opinion appellee had not suffered a fracture of the neck of his left femur. Another witness of the same profession

called on behalf of appellee testified that he examined appellee on January 17 and 18, 1909, and that, in his opinion, based on such examination, appellee had suffered a fracture of the neck of his left femur. It is conceded that the treatment prescribed for appellee in the hospital was the proper treatment for immobilizing his limb, and that the limb should be immobilized in the proper treatment of a fracture. of the neck of the femur, but based upon the testimony of one expert witness that in the treatment of such a fracture the limb should be immobilized for eight weeks; and a weight should be attached to the foot, and the testimony of another expert witness that he would not use the method just as described by appellee in the fracture of a thigh, it is argued that it is improbable that appellee was treated for the injury he claims to have sustained. We are not impressed with the force of the argument. The difference between the treatment actually prescribed for appellee, and the treatment suggested by the witnesses called by appellant is so slight, that it may readily be accounted for in the ordinary variation, due to individual judgment and discretion, as to the precise method of treatment to be adopted in a particular case.

Over the objection of appellant, two X-Ray sciagraphs of appellee's hips, taken a year and five months subsequent to the accident, were admitted in evidence. It was shown that appellee had sustained no intervening injury or illness, and the integrity of the sciagraphs was clearly established. They were properly admitted.

Two physicians called as expert witnesses by appellee were asked, in substance, to state if they knew what the sciagraph of appellee's left hip indicated with reference to a fracture. The witnesses replied, in substance, that the sciagraph or picture showed there was a shortening of the neck of the femur, and there could be seen a thickening in the more dense part of the

picture, which indicated a deposit of bone substance,—a formation of callus or new bone,—and that the cause of the condition shown would be a fracture. It is urged that this evidence was improperly admitted because it permitted the witnesses to state their individual conclusions or ideas of what the picture represented, or to state what the picture proved or tended to prove, thus invading the province of the jury.

The ordinary layman is unfamiliar with the structure in detail of the human anatomy, and with the appearance and normal relation to each other of the bones, muscles, etc., and is also unfamiliar with the method of operation of an X-Ray machine, and with the manifestation of the effects produced by it and the significance of the same. All these matters are, as yet, within the sphere of expert knowledge and opinion, and properly the subject of inquiry of expert witnesses. The evidence was properly admitted, and the record discloses that appellant's expert witnesses were subjected to the like examination by its counsel.

The jury were not unwarranted in finding that appellee sustained the injuries claimed by him.

Under the proof the damages are not excessive. There is no error in the record and the judgment is affirmed.

*Judgment affirmed.*